UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| JOSE O. GUZMAN, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 6:13-CV-41 |
| | § | |
| HACIENDA RECORDS, L.P., A/K/A/ | § | |
| HACIENDA RANCHITO AND/OR | § | |
| DISCOS RANCHITO, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**MEMORANDUM AND ORDER**

Plaintiff Jose Guzman, a nonagenarian Tejano musician, visited the Corpus Christi recording studio of Defendant Hacienda Records.[1] Guzman and Hacienda discussed some of Guzman's musical compositions, including the song "Dos Horas de Vida." After the meeting, Guzman received a $75 check from Hacienda dated May 22, 2011.[2] The notation line read "For rights to song 'Dos Horas De Vida.'"

[1] The other Defendants in this case, Latin American Entertainment, LLC and Roland Garcia, Sr., are associated with Hacienda Records. For simplicity, the Court will refer to the Defendants collectively as Hacienda.

[2] The parties dispute whether Guzman was handed the check at the meeting or if it was later mailed to him. Hacienda states that Garcia "presented" the check to Guzman, Docket Entry No. 41 ¶13, and Garcia's deposition testimony implies that Garcia wrote the check to Guzman in person. *See* Docket Entry No. 51-3 at 38:3–4; 41:16–22. Meanwhile, Guzman's testimony states that the check was sent in the mail. *See* Docket Entry No. 51-4 at 80:3–8 (Guzman deposition); Docket Entry No. 51-5 ¶7 (Guzman declaration). Additionally, Guzman has produced an envelope addressed to him from Garcia with Postal Service markings indicating it was mailed from the same zip code as Hacienda's office in May 2011; the check was dated May 22, 2011. *See* Docket Entry No. 51-6. This factual despite has to be resolved in Guzman's favor on summary judgment, though the Court would reach the same conclusion even if the check had

Guzman, who does not read English, cashed the check, which he says he believed was for promised gas money to compensate him for his travel to Corpus Christi.

Later in 2011, Hacienda issued an album containing a recording of "Dos Horas de Vida." On the song listing, appearing below "Dos Horas de Vida" is the name "Roland Garcia." Garcia is the co-founder, co-owner and President of Hacienda.

Guzman then filed this suit. He asserts state-law fraud claims alleging that he was tricked into cashing the check, as well as federal claims for copyright infringement and for tampering with copyright management information in violation of the Digital Millennium Copyright Act (DMCA). Hacienda now moves for summary judgment on the federal claims. The main issue to be decided is whether Guzman's cashing of the check with the "For rights to song" notation resulted in a transfer of the copyright to Hacienda.

## I. COPYRIGHT ACT

To establish a prima facie case of copyright infringement, a party must show that "(1) he owns a valid copyright and (2) the defendant copied constituent elements of the plaintiff's work that are original." *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012) (quoting *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 367 (5th Cir. 2004)). If the check transferred

---

been presented in person.

Guzman's copyright in *Dos Horas* to Hacienda, then the first element of the infringement claim fails.

Under the Copyright Act, "[a] transfer of copyright ownership . . . is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a). The purpose of section 204(a) is "to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses." *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 36 (2d. Cir. 1982), *superseded on other grounds by* Fed R. Civ. P. 52(a) (citation omitted); *see also Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990) ("Section 204[(a)] ensures that the creator of a work will not give away his copyright inadvertently and forces a party who wants to use the copyrighted work to negotiate with the creator to determine precisely what rights are being transferred and at what price." (citation omitted)). While the writing "doesn't have to be the Magna Charta [sic]" and "a one-line pro forma statement will do," *Cohen*, 908 F.2d at 557, it must "show an agreement to transfer copyright." *Lyrick Studios, Inc. v. Big Idea Prods., Inc.*, 420 F.3d 388, 392 (5th Cir. 2005).

This is the check at issue:

ROLAND GARCIA
1236 S. STAPLES ST. PH. 361-882-7066
CORPUS CHRISTI, TX 78404

1572

5-22-11

Jose O Guzman $ 75.00

Seventy Five + 00/100

LNB

For Rights to Song "Dos Horas De Vida"

[Docket Entry No. 41-1 at 2.]

Hacienda argues that a notated and endorsed check may be sufficient to satisfy § 204(a). There is authority for that position. *See Rico Records Distribs., Inc. v. Ithier*, 2006 WL 846488, at *1 (S.D.N.Y. Mar. 30, 2006) ("While an unlegended check will not satisfy the requirements of § 204(a), such insufficiency may be overcome when a legend on a check makes clear that a copyright transfer was intended."). A leading treatise concludes, however, that "[t]he case law is divided—some authority rejects check endorsements as written instruments to transfer copyright ownership, other cases allow it." MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 10.03[A][3] (internal citations omitted). Review of the case law leads this Court to conclude that there is no disagreement with the general proposition that language on a check *may* transfer a copyright; as with most legal issues, different facts lead to different results. *Compare, e.g., Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 311 & 311 n.8

(2d. Cir. 2013) (declining to consider checks as evidence of assignment of renewal copyrights when the checks "assign[ed], in general terms, all of [the plaintiff's] rights to [the defendant]" and noting that "the record does not reveal the exact language of these check legends and [the defendant] concedes that only the Agreement contains language that could have even arguably conveyed [the plaintiff's] renewal rights"), *Playboy Enters., Inc. v. Dumas*, 53 F.3d 549, 564 (2d Cir. 1995) (affirming district court's holding that check legend reading "payee acknowledges payment in full for the assignment to Playboy Enterprises, Inc. of all right, title, and interest in and to the following items: [a description of a painting followed]" was insufficient to transfer copyright under § 204(a) because it did not include the word "copyright" and because there was no evidence of an existing prior agreement (brackets in original)), *and Museum Boutique Intercontinental, Ltd. v. Picasso*, 880 F. Supp. 153, 162 & 162 n. 11 (S.D.N.Y 1995) (noting that two checks offered to prove the existence of a prior oral licensing agreement for purposes of section 204(a) did "not contain any explanatory notations besides 'Picasso royalties,'" and so were "not convincing proof, to say the least, of the alleged oral agreement"), *with Johnson v. Tuff-N-Rumble Mgmt., Inc.*, 2000 WL 1145748, at *6–7 (E.D. La. Aug. 14, 2000) (holding that endorsed check complied with section 204(a) when check legend stated it was for "assignment of [the plaintiff's] copyrights to [the defendant] agreement dated June 17, 1997," and

where there was an unsigned contract dated June 17, 1997 that referred to the check), *and Dean v. Burrows*, 732 F. Supp. 816, 818–19, 823 (E.D. Tenn. 1989) (holding that check bearing only notation for "mold designs and molds" satisfied section 204(a) when written transfer agreement in copyright owner's handwriting was prepared the same month the check was issued and was later recorded in the Copyright Office).

Looking at the check in this case on its own without extrinsic evidence (as Hacienda's summary judgment motion presents the issue), the Court concludes that this case has more in common with the cases rejecting assignment. Most notably, the only cases finding an assignment as a matter of law at summary judgment did so when separate contracts made that assignment clear. *See, e.g.*, *Johnson*, 2000 WL 1145748, at *6–7; *Dean*, 732 F. Supp. at 823. Even *Rico*, the case quoted above for the general proposition that language on a check may amount to a transfer, looked at extrinsic evidence to interpret the intent of the endorsement language in the context of the parties' course of dealings. The *Rico* court did so because the check endorsements "Purchase of rights of EGC catalogue" and "Bonus on L.P. recording agreement" were "not sufficiently clear as to unambiguously evidence copyright transfer, [though] they are susceptible to such an interpretation." 2006 WL 846488, at *1 (finding that "plaintiffs have adduced sufficient extrinsic evidence to make a jury issue of whether these legended checks

should be read as contracts of copyright transfer"). The separate contracts in *Johnson* and *Dean* provided answers to important questions that the "for rights to song" language in this case does not answer: Did the parties intend a right to license or an outright assignment of the copyright? *See Playboy*, 53 F.3d. at 564 (noting the word "copyright" was not on the check). And for how long? To the lyrics and/or the music?

Because the four words on the check do not evince a copyright transfer with the clarity that section 204(a) requires, Hacienda is not entitled to summary judgment on this issue. Extrinsic evidence that demonstrates the parties' intentions may help resolve this issue at trial.

## II. DIGITAL MILLENNIUM COPYRIGHT ACT

Guzman also alleges that Hacienda violated 17 U.S.C. § 1202(a), a provision of the DMCA that prohibits, among other things, knowingly providing or distributing false copyright management information with the intent to induce, enable, facilitate, or conceal copyright infringement. The DMCA defines "copyright management information" to include "[t]he name of, and other identifying information about, the author of a work." 17 U.S.C. § 1202(c)(2). Guzman's claim under the DMCA derives from an album recorded and publicly released by Hacienda that lists the name "Roland Garcia" below the song title "Dos

Horas de Vida."[3] Docket Entry No. 41 ¶14.

LOS GARCIA BROS.
CUATRO VATOS LOCOS
HAC-8283
MIS LOCOS DESVARIOS

1. Mis Locos Desvarios — Pending — 3:12 Ranchera
2. Aguanta Corazón — Alejandro Perez (Universal Musica / ASCAP) — 3:06 Ranchera
3. Marina — Pending — 2:48 Ranchera
4. La Cuchi Guapa — Ramiro Leija (Universal Z-Tunes / ASCAP) — 2:42 Cumbia
5. Ya Me Voy Para Siempre — Jose V. Flores (EMI Blackwood / BMI) — 3:19 Ranchera
6. Dos Horas De Vida — Roland Garcia (Roland Garcia Music / BMI) — 4:04 Corrido
7. Ilusionado — Rodolfo Leal (SAMP / BMI) — 3:24 Ranchera
8. Cuatro O Cinco Farolazos — Ray Monsivais (Peer International / BMI) — 3:12 Ranchera
9. Linda Morena — Pending — 3:16 Ranchera
10. La Movidita — Mario Rodriguez De Hoyos (Universal-Polygram / ASCAP) — 3:04 Cumbia
11. Voy Perdiendo — Pending — 3:28 Ranchera
12. Motivación — Pending — 2:35 Polka

Recorded, Mixed & Mastered at: Hacienda Recording Studio

Produced, Mixed & Mastered by: Rick Garcia
Engineer: R.D. Garza

LOS GARCIA BROTHERS
Jose Garcia Sr. - Drums & Vocals
Joey Garcia Jr. - Bass & Vocals
Primo Garcia - Bajo Sexto
Antonio Luis - Accordion
Special Musical Guests:
Javier Torres / Michael Gutierrez

For bookings or information:
830-513-8862

www.facebook.com:Los Garcia Brothers

© ℗ 2011 HACIENDA RECORDS
1236 S. Staples • Corpus Christi, TX 78404 • (361) 882-7066
Unauthorized duplication is a violation of applicable laws.

Listen to Hacienda Radio Network at: www.haciendarecords.com

[Docket Entry No. 41-2 at 3.]

Hacienda argues that Guzman, having transferred copyright ownership of *Dos Horas* to Hacienda, has no standing to bring a DMCA claim. For the reasons stated previously, this argument fails at this stage of the case.

In the alternative, Hacienda argues that an author of a musical work has no right to attribution on a finished music product under the Copyright Act. *See* 17 U.S.C. § 106. This misunderstands the nature of Guzman's claim: Guzman is not suing Hacienda for failing to identify him as the author of *Dos Horas*, but rather for falsely identifying Garcia as the author. *See Agence France Presse v. Morel*,

[3] The band Los Garcia Brothers recorded the song *Dos Horas* in Hacienda's recording studio for the album which is the subject of the DMCA claim. Docket Entry No. 41 ¶14. Roland Garcia has no relation to the band Los Garcia Brothers.

769 F. Supp. 2d 295, 304–06 (S.D.N.Y. 2011) (holding that the plaintiff's pleadings stated claim for falsification of copyright management information under DMCA when plaintiff alleged that news agency labeled his copyrighted photographs on agency's online photo database with lines crediting work to other organizations and individuals). The question is thus whether the words "Roland Garcia" were intended to provide authorship information or, as Hacienda seems to suggest, to provide different information, such as "publisher, song owner, performers, lyrics, [or] record label." Docket Entry No. 41 ¶24. Although those are reasonable inferences the jury could draw from looking at the album cover, so is another one: that Garcia is the author of the song. Summary judgment is therefore inappropriate on this claim.

Finally, Hacienda also seeks a ruling on the scope of statutory damages under the DMCA. The Court concludes that it is inefficient to decide this issue until the preliminary question of liability under the DMCA has been resolved at trial. *Cf. New York Pizzeria, Inc. v. Syal*, --- F. Supp. 3d ---, 2014 WL 5343523, at *3–4 (S.D. Tex. Oct. 20, 2014) (declining to decide issue related to scope of damages at Rule 12(b)(6) stage).

* * *

For the reasons explained above, Defendants' Motion for Partial Summary Judgment (Docket Entry No. 41) is **DENIED** with respect to Plaintiff's copyright

infringement and DMCA claims. The Court reserves ruling with respect to the proper measure of statutory damages under the DMCA. It is so **ORDERED**.

**SIGNED** this 24th day of February, 2015.

Gregg Costa
United States Circuit Judge*

* Sitting by designation.